**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **VILLAGE OF SCHAUMBURG, an Illinois home rule municipal corporation;** | ) ) ) | |
| **Plaintiff,** | ) ) | Case No. ___22CV601___ |
| **v.** | ) ) | |
| **VIRACON, INC., a Minnesota Corporation, QUANEX IG SYSTEMS, INC., an Ohio Corporation and TRUSEAL TECHNOLOGIES, INC., a Delaware Corporation,** | ) ) ) ) ) | **JURY DEMAND** |
| **Defendants.** | ) ) | |

<u>**VERIFIED COMPLAINT FOR DAMAGES AND OTHER RELIEF**</u>

Plaintiff, the VILLAGE OF SCHAUMBURG ("Village"), an Illinois home rule municipal corporation, by and through their attorneys, KLEIN, THORPE, and JENKINS, LTD., and for its Verified Complaint for Damages and Other Relief, brought against Defendants Viracon, Inc., a Minnesota corporation ("Viracon"), Quanex IG Systems, Inc., an Ohio Corporation ("Quanex"); and TruSeal Technologies, Inc. a Delaware corporation ("TruSeal"), allege and state as follows:

<u>**INTRODUCTION**</u>

1. This is an action against manufacturers which designed, fabricated and supplied Insulated Glass Units ("IGUs") for a building, the Renaissance Schaumburg Hotel and Convention Center (the "Building"), which is owned by the Village of Schaumburg. Defendants caused the Building to be constructed with defective IGUs into the Building. This occurred because, among other things, Defendants manufactured IGUs utilizing defective sealant that contains Gray polyisobutylene ("PIB"), which is known to degrade over time and to migrate

across the face of the glass, obstructing views, and otherwise rendering the windows unfit for its purposes. As a result of Defendants' acts and omissions and overall poor performance and due to the systemic nature of the failures, a majority if not all of the IGUs in the Building will need to be replaced. These defects will require remediation, and have caused, and will continue to cause the Village to incur damages well in excess of $4,200,000.

## THE PARTIES

2. Plaintiff the Village of Schaumburg is an Illinois home rule municipal corporation.

3. Defendant Viracon is a corporation formed and headquartered in Minnesota and at all relevant times was doing business as a manufacturer of insulating glass unites for distribution and sale in the State of Illinois.

4. Defendant Quanex is an Ohio corporation headquarted in Texas and at all relevant times was doing business as a manufacturer of engineered and building products and sale in the State of Illinois.

5. Defendant TruSeal is a Delaware corporation with its headquarters in Texas, acquired by Quanex, and at all relevant times was doing business as a manufacturer of engineered and building products for distribution and sale in the State of Illinois. Quanex is its successor-in-interest and/or its alter ego.

6. At all relevant times mentioned herein, Quanex and TruSeal supplied Gray PIB to their customer Viracon. Quanex, TruSeal, and Viracon acted in concert to develop, produce, and place into the stream of commerce a product line of IGUs containing Gray polyisobutylene ("PIB").

## SUBJECT-MATTER JURISDICTION

7.   This Court has subject-matter jurisdiction over the action pursuant to 28 U.S.C. § 1332, *et seq*., as the action is between citizens of different states and the amount in controversy exceeds the jurisdictional minimum of $75,000 exclusive of interest and costs.

## PERSONAL JURISDICTION

8.   This Court has jurisdiction over the Defendants Viracon, Quanex, and TruSeal based on their contacts within the forum including: i) they supplied materials and products in Illinois for use within the judicial district of the Northern District; ii) they placed their products in the stream of commerce within Illinois and specifically within the judicial district of the Northern District; iii) they caused injury and damages in Illinois within the judicial district of the Northern District by their acts or omissions both inside and outside the state; iv) they acquired substantial revenue from materials and products used in Illinois within the judicial district of the Northern District; and v) as otherwise authorized by law and consistent with the U.S. Constitution. Additionally, Quanex has multiple facilities located in the State of Illinois.  Quanex acquired TruSeal in 2004 in order to expand their window business dealings, including within the State of Illinois and the Northern District.  Quanex brought all of its business under one brand name to strengthen its presence in the building and construction market.  The company has at least three facilities located in the state of Illinois.

## VENUE

9.   Venue is proper in this Court pursuant to 28 U.S.C. § 1332, *et seq*., as it is the judicial district in which: i) Schaumburg is located; ii) a substantial of the events or omissions giving rise to the claim occurred; and iii) the property that is the subject of the action is located.

## FACTS

10.  The Village owns the Building and the property on which it is located at 1551 N. Thoreau Drive, Schaumburg, Illinois.  The Village entered into a contract for the construction of the Building on June 23, 2004 with Walsh Construction Company acting as general contractor. Construction of the Building was completed in 2006.

11.  The Building's exterior is a curtainwall system that includes glazing manufactured by Viracon, which contains components made by TruSeal and Quanex.  A curtainwall is a system of metal work, glass, and glazing, the primary components of which are IGUs.  IGUs are windows made of two or more glass panes that are hermetically sealed with a PIB sealant. Multiple IGUs are installed as the exterior of the Building to comprise the curtainwall.  Each panel of the window bank is essentially a module fastened to the building's structural frame and consists of multiple components including an IGU.  In this manner, the IGUs, their joinery, and the cladding form a coordinated esthetic and the building's exterior.

12.  An IGU is the double paned window that functions as both an exterior wall and window to provide temperature and sound insulation and act as barrier like a wall while allowing the sightline visibility and transmission of natural light of a window.  Each IGU has multiple component parts, its glass panes are set parallel to each other separated evenly by a metal spacer. The panes are connected to the spacer with a silicon structural sealant.  Another sealant of primarily PIB is used to create a hermetically sealed air space between the panes of glass in the IGU supporting its thermal and acoustical insulating properties.  The Building has approximately six hundred IGUs.

13.  PIB is intended to create a high-viscosity, weather-tight and water-tight seal, which prevents moisture vapor transmission into the internal air space of the IGUs that comprise a curtainwall.  A uniform, consistent PIB seal is essential for a functional and weather-tight IGU.

453856_2

14. PIB sealant used in the fabrication of IGUs is generally either black or gray in color. While the composition of black PIB tends to make it naturally resistant to degradation associated with exposure to sunlight and ultraviolet (UV) radiation, gray-colored PIB typically requires the addition of a UV stabilizer package and/or anti-oxidants in sufficient quantity to resist this type of degradation. The IGUs in the Building use Gray PIB as opposed to standard Black PIB.

15. Upon information and belief, Gray PIB is susceptible to molecular degradation of the PIB polymer when subject to sustained exposure to sunlight and ultraviolet (UV) radiation. The molecular degradation of the PIB polymer typically leads to a corresponding reduction in molecular weight and viscosity of the material itself. This in turn may cause the PIB sealant to "migrate," or run or drip, from the IGU joint into the vision area of an IGU. The migration may be exacerbated in areas where IGUs may be exposed to excessively high service temperatures, such as spandrel and shadow-box conditions and in areas where reflected sunlight and heat may occur.

16. Once migration begins, it is considered progressive and irreversible. Moreover, once the PIB sealant has begun to evacuate the space in which it was originally installed and intended to function, a corresponding loss of cross-sectional area in the remaining sealant within that space may lead to structural failure of the IGU, as the PIB sealant serves as the primary seal for the IGU. Thus, once PIB migration starts to occur, it will progressively worsen over time and is likely to expand more consistently into the visible areas of the glass. Because an IGU is a pre-assembled, fully sealed construction product, the PIB itself cannot be removed and replaced. Rather, the only known resolution to address this condition is removal and replacement of the IGUs.

17.   Viracon manufactured and supplied the IGUs installed at the Building. Upon information and belief, Quanex and TruSeal manufactured the Gray PIB used as the primary sealant by Viracon to manufacture the IGUs.

18.   Beginning in November of 2008, the Building's management company observed fogging inside windows in the Building.  The company which installed the IGUs, Permasteelista, was notified and informed the management company that the windows were still under warranty. It was then reported to Permasteelista that two windows were leaking in the Club lounge.  Three replacement windows were installed in August of 2009.

19.   Upon information and belief, Viracon had received a complaint from the Building's management that the Gray PIB was failing prior to May 30, 2012.   And therefore, upon information and belief, Viracon was informed of and aware that the Gray PIB was failing at the Building.  Specifically, Rick Voelker, who was Vice President of Technical Services for Viracon at the time, had knowledge that the Gray PIB at the Building was deficient.

20.   Upon information and belief, at the time Viracon knew of the Gray PIB failure at the Building, and withheld information that the Gray PIB was failing, deficient in its functioning and that it would impair the IGUs ability to function as a window and the overall appearance of the Building exterior.

21.   In 2013, the management company then notified Permasteelista that there was window sealing issues on the south elevation of the Building; many of the windows were demonstrating sealant dripping on the inside.  At that time, Building's management had been in communication with Viracon, who was to review the window issues and stated their intention to test the butyl inside of the windows previously removed.  The windows were sent to Viracon and the testing was done in October of 2013.  Viracon indicated that the material would be sent to

another lab to confirm test results. By December, no update as to testing was given to the Building management.

22. In 2014, Rick Voelker sent a letter to Robert Lang, Director of Engineering at the Building, regarding Viracon's position on the Gray PIB at the Building. He advised that the PIB had not failed, but rather only acknowledged uncharacteristic movement in some IGUs as cosmetic. Upon information and belief, Viracon knew that the Gray PIB's deficiencies were beyond cosmetic at the time the IGUs were sold and installed at the Building. In fact, Viracon knew that the Gray PIB failed to function as it should and the condition of the IGUs and the Building would deteriorate because of the deficient qualities of the Gray PIB. Despite this knowledge, Viracon failed to replace all the windows at the time the condition was reported to Viracon.

23. A meeting between the Building's management, Rick Voelker and Bob Carlson from Viracon and John Sanji from Permasteelista occurred in February 2014. Viracon made a subsequent offer to replace the glass as a "gesture of good will" since their warranty excluded replacing labor costs by way of a letter from Rick Voelker, Vice President of Technical Services. Viracon maintained the issues were cosmetic only. In his letter, Voelker states that Viracon previously visited this facility to inspect the glass and see the condition that exists in some of the IGUs installed in the Building.

24. More fogging and condensation presented itself in more of the Building's windows in November of 2018. The Building's management requested replacement windows from Viracon. Viracon provided replacement glass only under the warranty for a limited number of windows.

25.  In October of 2019, the General Manager contacted Viracon on behalf of the Village regarding the failure of the entirety of the IGU product installed at the Building.

26.  The Village has conducted surveys of the Building to evaluate the windows.  One survey determined that there was PIB sealant migration on 90.2% of all accessible IGUs; 497 of 551 IGUs observed had visible PIB sealant migration.

27.  Upon information and belief, the mottling of the Gray PIB that creates the IGUs hermetic seal occurs as a result of a performance malfunction and failure of the Gray PIB.  Due to the performance malfunction, the Gray PIB has gradually and progressively formed a film migrating into the sightlines and glass of the IGUs impairing their ability to function as a window and the overall appearance of the Building exterior.  The film appears in various ways such as a dramatic expansion or stretching, a bubbling from the spacer onto the panes' interior surfaces, long solitary icicles, or a dripping band of seepage.  Industry standard and manufacturer tolerances for the movement of PIB to extend into the sightline of the IGUs are no more than an 1/8th of an inch.  Upon information and belief, all of the building's IGUs are manufactured with the same Gray PIB, and to varying degrees most are experiencing mottling and migration beyond industry and manufacturer standards.  Further, upon information and belief, the Gray PIB mottling and migration is continuing and progressing such that the problem will worsen over time in all of the Building's IGUs.

28.  Upon information and belief, the performance and longevity of the Gray PIB is not equal to that of the standard Black PIB.

29.  The Village is informed and believes, and on that basis alleges, that for years, the industry standard PIB was black and included an ingredient called carbon black.  Carbon black has numerous beneficial properties in this application, including protecting the PIB from

degrading in sunlight. Nevertheless, Viracon used Gray PIB in manufacturing the IGUs for the Building and Quanex and TruSeal continued to manufacture the Gray PIB that was used for the IGUs of the Building.

30. Viracon, Quanex, and TruSeal each had knowledge that the Gray PIB was defective and its performance was inferior to that of Black PIB, and that due to the defective nature, the IGUs manufactured with Gray PIB would not be suitable for their intended purposes and that the performance of the Gray PIB and IGUs would not endure as intended or required. The Village is informed and believes, and on that basis alleges, that prior to the start of construction at the Building, and continuing through the installation of the IGUs on the Building, Viracon, Quanex, and TruSeal acquired knowledge that the Gray PIB was defective and would fail. Indeed, as early as 2005 Viracon was experiencing problems with the Gray PIB on the production line, which was communicated to Quanex and TruSeal, and which were not resolved by the time that Viracon began manufacturing and delivering the IGUs for use on the Building.

31. The Village is informed and believes that concurrently with the manufacturing and installation of defective IGUs for the Building, Viracon, Quanex, and TruSeal each knew of other buildings experiencing the same defective Gray PIB issues including lack of adhesion and/or cohesion, film formation and the failure of the hermetic seal, caused by among other things, its inability to withstand direct and indirect exposure to sunlight without suffering a decrease in its molecular weight. Instead of informing the Village or others involved with the development of the Building about the defect or defects, Quanex and TruSeal continued to provide Gray PIB to Viracon, and Viracon continued to manufacture IGUs with the Gray PIB sealant, deliver them to the Village, and allow them to be installed at the Building.

453856_2

32.  The Defendants understood and knew that the type of damages the Village complains of here were likely to occur, more likely to occur than if standard Black PIB were used in the IGUs, and did nothing to prevent the Gray PIB from reaching the marketplace, or prevent the installation of IGUs using the Gray PIB on the Building.  Nor did the Defendants ever warn of the high potential that the damages complained of herein would occur if Gray PIB was used. Defendants also took no action to inform the Village or others involved with the development of the Building after installation of the Building's IGUs of Gray PIB's performance issues known to Defendants, nor did Defendants undertake any form of investigation, provide notice, or recommend maintenance or mitigation measures related to the IGUs containing the Gray PIB. Instead, the Defendants each prepared and disseminated product literature indicating the Gray PIB performed as well as the Black PIB and could be used interchangeably with identical results.

## COUNT I:  STRICT PRODUCTS LIABILITY AGAINST VIRACON

33.  The Village incorporates herein by reference the allegations contained in Paragraphs 1 through 32.

34.  At all relevant times, Viracon was the manufacturer, marketer, distributor, supplier and/or seller of the IGUs sold to and installed at the Building as defined by 735 ILCS 5/2-2101.

35.  At all relevant times, Quanex and/or TruSeal manufactured and sold to Viracon, and thereby placed on the market, the Gray PIB used on the IGUs for the Building.

36.  Viracon manufactured and sold, and thereby placed on the market, the IGUs used on the building.

37.  Viracon knew it would be supplying IGUs to the Building and that Viracon was responsible for the quality of the IGUs.

38.  In so placing the IGUs on the market, Viracon knew that the IGUs were to be used without inspection for defects.  Further, Viracon knew that it was supplying IGUs to the Building and that Viracon was responsible for the quality of the IGUs.

39.  The IGUs supplied and manufactured by Viracon contained latent manufacturing, design, and warning defects that caused physical damage to the Building.  The IGUs contained those latent defects when they left Viracon's possession.

40.  The IGUs had potential risks that were known or knowable in light of the scientific knowledge that was generally accepted in the scientific community at the time they were manufactured and installed at the Building.  The IGUs were and are dangerous to an extent beyond that which would be contemplated and expected by the ordinary consumer of such products with the ordinary knowledge common to the community as to the characteristics of such products.  The IGUs were and are defective as a consequence of design flaws and/or manufacturing defects by Viracon.  Viracon failed to adequately warn the Village or others involved of the risks.

41.  The IGUs were intended to and did reach the Building without substantial change from the condition in which they were manufactured, marketed, sold and distributed by Viracon.

42.  The IGUs were installed and used in the Building in the manner in which they were manufactured, marketed, sold and distributed by Viracon.

43.  The IGUs provided by Viracon were and are not reasonably safe as designed and manufactured, because they are prematurely deteriorating and failing to perform as intended. Viracon did not provide adequate warnings at the time of the IGUs manufacture of the likelihood that the IGUs would cause the Village harms as complained herein or similar harms or the seriousness of such harms that would require destruction, removal and replacement of other

components of the Building in order to obtain access to the areas in need of remediation at the Building. Meanwhile, there is continued water intrusion that will lead to further damages. Such repairs will also cause loss of use of the Building. The IGUs use and rely on the inferior and defective Gray PIB as a primary seal which has led and will continue to lead to the above-described property damage and other damages at the Building beyond that contemplated by an ordinary user.

44. If Viracon had warned the Village or others involved with the Building of the increased likelihood of failure of IGUs made with Gray PIB as opposed to those made with standard Black PIB, and the type and seriousness of the potential failures, the Village or others involved with the Building could and would have prevented Gray PIB IGUs from being used at the Building.

45. The defects in the IGUs were the foreseeable and proximate cause of considerable property damage and other damages to the Building and the Village, including, but not limited to, those parts of the Building that are not the IGUs.

46. As a direct and proximate result of Viracon's acts or omissions, the Village has suffered injury and damages in excess of the jurisdictional minimum. Specifically, the Village has incurred and will continue to incur substantial costs to investigate and identify the numerous deficiencies and defects with IGUs and Grey PIB sealant, and has and will continue to incur substantial additional costs to repair the deficient work, costs to repair property damaged by deficient work, and has suffered special, consequential, and other damages, all in amounts according to proof at trial.

**COUNT II: STRICT PRODUCTS LIABILITY AGAINST QUANEX AND TRUSEAL**

47. The Village incorporates herein by reference the allegations contained in Paragraphs 1 through 46.

48. At all relevant time Quanex and TruSeal were the manufacturers, marketers, distributors, suppliers and/or sellers of the Gray PIB used on the IGUs at the Building as defined by 735 ILCS 5/2-2101.

49. At all relevant times, Quanex and/or TruSeal manufactured and sold to Viracon, and thereby placed on the market, the Gray PIB used on the IGUs for the Building.

50. Viracon manufactured and sold, and thereby placed on the market, the IGUs used on the building.

51. Quanex and/or TruSeal knew it would be supplying Gray PIB to Viracon for incorporation into IGUs that would be supplied for installation at projects like the Building.

52. In so placing the IGUs on the market, Quanex and/or TruSeal knew that the IGUs were to be used without inspection for defects. Further, Quanex and/or TruSeal knew that it was supplying Gray PIB for incorporation into IGUs at the Building and that Quanex and/or TruSeal was responsible for the quality of that Gray PIB.

53. The Gray PIB supplied and manufactured by Quanex and/or TruSeal contained latent manufacturing, design, and warning defects that caused physical damage to the Building. The Gray PIB contained those latent defects when they left Quanex and/or TruSeal's possession.

54. The Gray PIB had potential risks that were known or knowable in light of the scientific knowledge that was generally accepted in the scientific community at the time they were manufactured and installed at the Building. The Gray PIB was and is dangerous to an extent beyond that which would be contemplated and expected by the ordinary consumer of such products with the ordinary knowledge common to the community as to the characteristics of such

products. The Gray PIB was and is defective as a consequence of design flaws and/or manufacturing defects by Quanex and/or TruSeal. Quanex and/or TruSeal failed to adequately warn the Village or others involved of the risks.

55. The Gray PIB was intended to and did reach the Building without substantial change from the condition in which it was manufactured, marketed, sold and distributed by Quanex and/or TruSeal.

56. The Gray PIB was installed and used in the Building in the manner in which it was manufactured, marketed, sold and distributed by Quanex and/or TruSeal.

57. The Gray PIB provided by Quanex and/or TruSeal was and is not reasonably safe as designed and manufactured, because it is prematurely deteriorating and failing to perform as intended. Quanex and/or TruSeal did not provide adequate warnings at the time of the Gray PIB manufacture of the likelihood that the Gray PIB would cause the Village harms as complained herein or similar harms or the seriousness of such harms that would require destruction, removal and replacement of other components of the Building in order to obtain access to the areas in need of remediation at the Building. Meanwhile, there is continued water intrusion that will lead to further damages. Such repairs will also cause loss of use of the Building. The Gray PIB is inferior and defective as a primary seal on the IGUs, which has led and will continue to lead to the above-described property damage and other damages at the Building beyond that contemplated by an ordinary user.

58. If Quanex and/or TruSeal had warned the Village or others involved with the Building of the increased likelihood of failure of the Gray PIB as opposed to the standard Black PIB, and the type and seriousness of the potential failures, the Village or others involved with the Building could and would have prevented Gray PIB IGUs from being used at the Building.

453856_2

59.  The defects in the IGUs were the foreseeable and proximate cause of considerable property damage and other damages to the Building and the Village, including, but not limited to, those parts of the Building that are not the IGUs.

60.  As a direct and proximate result of Quanex and/or TruSeal's acts or omissions, the Village has suffered injury and damages in excess of the jurisdictional minimum.  Specifically, the Village has incurred and will continue to incur substantial costs to investigate and identify the numerous deficiencies and defects with IGUs and Grey PIB sealant, and has and will continue to incur substantial additional costs to repair the deficient work, costs to repair property damaged by deficient work, and has suffered special, consequential, and other damages, all in amounts according to proof at trial.

## COUNT III: BREACH OF EXPRESS AND IMPLIED WARRANTY AGAINST VIRACON

61.  The Village incorporates herein by reference the allegations contained in Paragraphs 1 through 60.

62.  Viracon agreed to manufacture and supply the IGUs in accordance with the published Specifications, which expressly warranted that the IGUs would be free from defects for a period of ten years.  Viracon agreed that said warranties were guaranteed direct to the Village.

63.  Walsh Construction Company entered into a subcontract with Viracon whereby the IGUs were purchased and to be used on the Building.  As the owner of the Building, the Village was an intended beneficiary of the subcontract.

64.  There are express and implied warranties in the subcontract pursuant to which Viracon ensured that the IGUs it manufactured were free of deficiencies, defects or errors.

Viracon breached the express and implied warranties in the subcontract by providing defective IGUs.

65.    As a direct and proximate result of Viracon's breach of express and implied warranties as set forth above, the Village has suffered injury and damages.  Specifically, the Village has incurred and will continue to incur substantial costs to investigate and identify the numerous deficiencies and defects with the IGUs, and has and will continue to incur substantial additional costs to repair the deficient work, costs to repair property damaged by deficient work, and has suffered special, consequential, and other damages, and is entitled to recover damages as alleged.

## COUNT IV:  FRAUD AGAINST VIRACON

66.  The Village incorporates herein by reference the allegations contained in Paragraphs 1 through 65.

67.  Viracon's product literature indicated that the IGUs it manufactured that were ultimately installed at the Building were suitable for their intended purpose to provide temperature and sound insulation and act as barrier while allowing the sightline visibility and transmission of natural light, and that such performance would endure. Viracon's product literature also misrepresented that the IGUs manufactured with Gray PIB would perform and endure as the equivalent of the IGUs manufactured with standard Black PIB.  Such misrepresentations by Viracon were made to induce purchases of IGUs that were manufactured with Gray PIB, purchases such as those that resulted in the IGUs installed at the Building.

68.  Furthermore, the Village is informed and believes, and on that basis alleges, that for years, the industry standard PIB was black and included an ingredient called carbon black. Carbon black has numerous beneficial properties in this application, including protecting the PIB

from degrading in sunlight. Nevertheless, Viracon used Gray PIB in manufacturing the IGUs for the Building.

69. Viracon had knowledge that the Gray PIB was defective and its performance was inferior to that of Black PIB, and that due to the defective nature, the Gray PIB and IGUs would not be suitable for their intended purposes and that the performance of the Gray PIB and IGUs would not endure as intended or required. The Village is informed and believes, and on that basis alleges, that prior to the start of construction at the Building, and continuing through the installation of the IGUs on the Building, Viracon acquired knowledge that the Gray PIB it was using was defective and would fail. As early as 2005, Viracon was experiencing problems with the Gray PIB on the production line, which were not resolved by the time that Viracon began manufacturing and delivering the IGUs for use on the Building.

70. Furthermore, the Village is informed and believes that concurrently with the manufacturing and installation of defective IGUs on the Building, Viracon knew of other buildings experiencing the same defective Gray PIB issues including lack of adhesion and/or cohesion, film formation and the failure of the hermetic seal, caused by among other things, its inability to withstand direct and indirect exposure to sunlight without suffering a decrease in its molecular weight. Instead of informing the Village or others involved with the development of the Building about the defect or defects, Viracon continued to manufacture IGUs with the Gray PIB sealant, deliver them to the Village, and allow them to be installed at the Building.

71. With knowledge of the falsity of its representation that IGUs manufactured with Gray PIB would function as the equivalent to those manufactured with Black PIB, Viracon put IGUs containing inferior and defective Gray PIB into the marketplace and did not provide notice of their defective and inferior qualities.

72.  The Village is informed and believes, and on that basis alleges, that as between the Village and those involved with the development of the Building on the one hand and Viracon on the other hand, Viracon alone had knowledge of such material facts and actively misrepresented the known information in addition to intentionally concealing this information from the Village and others involved with the development of the Building.  In pursuit of profits, with oppression, fraud, malice, deliberate or flagrant disregard, reckless indifference, and/or evil motive and with conscious disregard of the Village's rights, Viracon continued to manufacture and deliver defective Gray PIB and IGUs for installation at the Building.  This was in disregard to the unjust hardship to the Village of ultimately having to remove and replace all of the IGUs at the Building.  This conduct was authorized by managing agents at Viracon who possessed knowledge of the defective performance of the Gray PIB both during the IGU production and as installed in the field and the continued keeping of the information secret; and who also falsely marketed, since at least July 15, 2002, that the Gray PIB had the same long term durability as IGUs utilizing Black PIB for its primary seal.

73.  The Village and those involved with the development of the Building had no knowledge of any problems with the Gray PIB being used in the IGUs at the Building, nor was such information reasonably discoverable by the Village. Accordingly, the Village and those involved with the development of the Building reasonably relied on Viracon's apparent reputation as a manufacturer of high-quality IGUs, and Viracon's non-disclosure of the problems plaguing IGUs utilizing Gray PIB primary sealant.

74.  Had the Village or others involved with the development of the Building known that the Gray PIB was causing Viracon's unusual production problems and the owners of other buildings to suffer damages from defective IGUs, or been advised that Gray PIB IGUs would

perform in the manner actually experienced at the Building, the Village would not have allowed the Gray PIB to be used in the IGUs installed at the Building.

75.  Viracon was required to inform customers in order to avoid allowing customers to use and be damaged by a product it manufactured and knew to be defective particularly in light of the seriousness of the damages its concealment would cause including those necessary to repair the IGUs.

76.  As a direct and proximate result of Viracon's concealment of these facts from the Village and those involved with the development of the Building and the placement of approximately six hundred IGUs at the Building with defective Gray PIB, the Village has suffered injuries and damages in excess of the jurisdictional minimum, which will be established in an amount according to proof at trial.

77.  Further, Viracon's conduct, as alleged above, was done with an intentional and conscious disregard of the Village's rights and with oppression, fraud, malice, deliberate or flagrant disregard, reckless indifference, and/or evil motive entitling the Village to an award of punitive and exemplary damages assessed against Viracon, in sums according to proof, as a means of deterring Viracon from committing similar acts and omissions in the future and punishing Viracon for its wrongful conduct.

## COUNT V:  FRAUD AGAINST QUANEX AND TRUSEAL

78.  The Village incorporates herein by reference the allegations contained in Paragraphs 1 through 77.

79.  The Village is informed and believes, and on that basis alleges, that for years, the industry standard PIB was black and included an ingredient called carbon black. Carbon black has numerous beneficial properties in this application, including protecting the PIB from

degrading in sunlight. Nevertheless, Quanex and TruSeal developed, marketed, and sold Gray PIB that was used at the Building.

80. Quanex and TruSeal had knowledge that the Gray PIB was defective and its performance was inferior to that of Black PIB, and that due to the defective nature, the Gray PIB would not be suitable for its intended purpose and that the performance of Gray PIB IGUs would not endure as intended or required. The Village is informed and believes, and on that basis alleges, that prior to the start of construction at the Building, and continuing through the installation of the IGUs on the Building, Quanex and TruSeal acquired knowledge that the Gray PIB it was using was defective and would fail. As early as 2005, Quanex and TruSeal learned that Viracon was experiencing problems with the Gray PIB on the production line, which were not resolved by the time that Viracon began manufacturing and delivering the IGUs for use on the Building.

81. Furthermore, the Village is informed and believes that concurrently with the manufacturing and installation of defective IGUs on the Building, Quanex and TruSeal knew of other buildings experiencing the same defective Gray PIB issues including lack of adhesion and/or cohesion, film formation and the failure of the hermetic seal, caused by among other things, its inability to withstand direct and indirect exposure to sunlight without suffering a decrease in its molecular weight. Instead of informing the Village or others involved with the development of the Building about the defect or defects, Quanex and TruSeal continued to manufacture Gray PIB sealant for IGUs which were to be delivered to the Village, and allow them to be installed at the Building.

82. With knowledge of the falsity of its representation that Gray PIB would function as the equivalent to Black PIB, Quanex and TruSeal allowed IGUs to be manufactured that

contained inferior and defective Gray PIB, which entered the marketplace with no notice of their defective and inferior qualities.

83. The Village is informed and believes, and on that basis alleges, that as between the Village and those involved with the development of the Building on the one hand and Quanex and TruSeal on the other, Quanex and TruSeal alone had knowledge of such material facts and intentionally concealed this information from the Village and others involved with the development of the Building. In despicable pursuit of profits, with oppression, fraud, malice, deliberate or flagrant disregard, reckless indifference, and/or evil motive and with conscious disregard of the Village's rights, Quanex and TruSeal continued to manufacture and deliver defective Gray PIB for installation into the curtainwall system at the Building. This was in disregard to the unjust hardship to the Village of ultimately having to remove and replace all of the IGUs at the Building. This conduct was authorized by managing agents at Quanex and TruSeal who possessed knowledge of the defective performance of the Gray PIB both during the IG Unit production and as installed in the field and the continued keeping of the information secret; and who also falsely marketed, since at least July 15, 2002, that the Gray PIB had the same long term durability as IGUs utilizing Black PIB for its primary seal.

84. The Village and those involved with the development of the Building had no knowledge of any problems with the Gray PIB being used in the IGUs at the Building, nor was such information reasonably discoverable by the Village. Accordingly, the Village and those involved with the development of the Building reasonably relied on Viracon's apparent reputation as a manufacturer of high-quality IGUs, and Viracon's non-disclosure of the problems plaguing IGUs utilizing Gray PIB primary sealant.

453856_2

85. Had the Village or others involved with the development of the Building known that the Gray PIB was causing Viracon's unusual production problems and the owners of other buildings to suffer damages from defective IGUs, or been advised that Gray PIB would perform in the manner actually experienced at the Building, the Village or others involved with the development of the Building would not have allowed the Gray PIB to be installed at the Building.

86. Quanex and TruSeal were required to inform customers to avoid allowing consumers to use and be damaged by a product it manufactured and knew to be defective particularly in light of the seriousness of the damages its concealment would cause including those necessary to repair the Gray PIB.

87. As a direct and proximate result of Quanex and TruSeal's concealment of these facts from the Village and those involved with the development of the Building and the placement of approximately six hundred IGUs at the Building with defective Gray PIB, the Village has suffered injuries and damages in excess of the jurisdictional minimum, which will be established in an amount according to proof at trial.

88. Further, Quanex and TruSeal's conduct, as alleged above, was done with an intentional and conscious disregard of the Village's rights and with oppression, fraud, malice, deliberate or flagrant disregard, reckless indifference, and/or evil motive entitling the Village to an award of punitive and exemplary damages assessed against Quanex and TruSeal, in sums according to proof, as a means of deterring Quanex and TruSeal from committing similar acts and omissions in the future and punishing Quanex and TruSeal for their wrongful conduct.

## JOINT AND SEVERAL LIABILITY

89.  The Village incorporates herein by reference the allegations contained in Paragraphs 1 through 88.

90.  Pursuant to 735 ILCS 5/2-1117, Viracon, Quanex, and TruSeal are jointly and severally liable for the damages of the Village because the Village was not at fault in incurring the property damages at the Building and the defendants acted in concert with each other in causing the damages.

## PUNITIVE DAMAGES

91.  The Village incorporates herein by reference the allegations contained in Paragraphs 1 through 90.

92.  The Village seeks punitive and exemplary damages against Viracon under 735 ILCS 5/2-604.1 allowing for such in the cases of products liability and fraud allegations.

93.  The Village seeks punitive and exemplary damages against Quanex under 735 ILCS 5/2-604.1 allowing for such in the cases of products liability and fraud allegations.

94.  The Village seeks punitive and exemplary damages against TruSeal under 735 ILCS 5/2-604.1 allowing for such in the cases of products liability and fraud allegations.

## DEMAND FOR JURY TRIAL

95.  The Village demands that all issues herein be tried by a jury pursuant to FRCP Rule 38.

## PRAYER FOR RELIEF

Wherefore, the Village prays for judgment against Viracon, Quanex, and TruSeal as follows:

1.  For compensatory damages according to proof at trial;

2.  For general, special, and other damages according to proof at trial;

453856_2

3. For costs of investigation to identify the defects and necessary repairs;

4. For pre-judgment and post-judgment interest at the maximum amount and

rate permitted by law;

5. For costs of suit herein;

6. For punitive and/or exemplary damages; and

7. For such other relief as the Court may deem just and proper.


Respectfully submitted,


/s/ *Lance C. Malina*

Lance C. Malina
Carlos S. Arévalo
KLEIN, THORPE & JENKINS, LTD.
20 N. Wacker Drive, Ste. 1600
Chicago, IL 60606
(312) 984-6400
lcmalina@ktjlaw.com
csarevalo@ktjlaw.com
*Attorneys for Plaintiffs*

453856_2

**STATE OF ILLINOIS**         )
                              ) SS

**COUNTY OF LAKE**         )

**VERIFICATION**

I, Brian A. Townsend, being first duly sworn on oath, depose and state that I am the duly authorized Village Manager for the Village of Schaumburg, and the duly authorized agent of the Village for purposes of making this Affidavit; that I have read the foregoing Complaint for Damages and Other Relief; that I have personal knowledge of the content thereof and that the matters set forth therein are true and correct in substance and in fact to the best of my knowledge.

By: _____
               Brian A. Townsend

SUBSCRIBED AND SWORN TO
Before me on this 31 day of
January ___, 2022.

_____
            Notary Public

OFFICIAL SEAL
RENEE M ROMANOWSKI
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:07/22/22

453856_2